IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 2:10-cv-24288-KMM

ANTONIO MORENO BELTRAN,

    Plaintiff,

vs.

MARVIN RIVERA, et al.,

    Defendants.

_____/

## MEMORANDUM OF DECISION

### I. INTRODUCTION

This matter is before the Court for decision following a one day, non-jury trial held on Monday, April 23, 2012 in Miami, Florida. Plaintiff, Antonio Moreno Beltran, seeks a declaration pursuant to 8 U.S.C. § 1503 that he is a United States citizen by virtue of his alleged birth in the United States. This Court, having fully considered the testimony and documentary evidence received at trial, as well as the applicable law and arguments of counsel, oral and written, now finds that Plaintiff has not met his burden of proof, by a preponderance of the evidence, that he is a United States citizen.

### II. FINDINGS OF FACT

Plaintiff was born on May 10, 1960. Plaintiff's parents were migrant workers who often traveled for extensive periods of time between Mexico and the United States. Apr. 23, 2012 Hr'g Tr., at 37-38. Both his parents were illiterate and did not understand the English language. Tr., at 16, 17. Plaintiff's parents told him a midwife aided with his birth while they were working in the United States. His parents told him and his siblings that he was born and

1

baptized in Victoria, Texas. Plaintiff's parents returned to Mexico shortly after his birth. Tr., at 35, 38. On May 21, 1960, Plaintiff's parents filed a birth certificate in Mexico stating that he was born on May 10, 1960 in Zapata, Sain Alto, Zacateras, Mexico. Ex. A (ECF No. 47-1). Plaintiff was also baptized in Mexico, but he no longer has the baptismal certificate. Tr., at 21.

Plaintiff grew up in Mexico and lived there until he was approximately 24 years old. Tr., at 17. Growing up, Plaintiff and the rest of his brothers and sisters believed he was born in Victoria, Texas. Plaintiff's family members, however, were aware that he had birth certificates and baptismal records from both Mexico and Texas. All of Plaintiff's brothers and sisters were born in Zapata, Sain Alto, Zacateras, Mexico and none of his siblings were born in a hospital. Tr., at 39-40. Plaintiff's siblings would sometimes call him "Mojado" which means "wet" because he was born in the United States. Tr., at 36, 43. Additionally, Plaintiff obtained a Mexican driver's license during his youth. Tr., at 25.

Plaintiff decided to move to Florida in approximately 1984. Tr., at 18. At this time, his mother gave him legal documentation in order for him to enter the United States. Tr., at 18-20. His mother kept all of the family's legal documents. Tr., at 4. His mother gave him: (1) a Texas birth certificate, Ex. D (ECF No. 47-3), which states he was born in Victoria Texas; (2) a certificate of baptism, Ex. G (ECF No. 47-6), from a church in Texas; and (3) a social security card. Tr., at 19-20. Plaintiff used this documentation to enter the United Sates through Laredo, Texas. Tr., at 3-4. Plaintiff traveled to Mexico in approximately 1991 and used this documentation to return to the United States shortly thereafter. Tr., at 5.

Plaintiff used his social security card to work in the United States from 1984 until 1990. Tr., at 19. Plaintiff lost his social security card so he went to the social security office in Fort Meyers, Florida to obtain a new one. Tr., at 20. However, the social security office would not

2

issue him a new card because the office claimed the social security number belonged to another person. Tr., at 20. Although Plaintiff protested this determination, Plaintiff did not have a social security card for a number of years. Tr., at 20.

Plaintiff married his wife, Maria Asuncion Moreno, on February 22, 1992 in Zacatecas, Mexico. Tr., at 5. They were married at a courthouse and were issued a marriage certificate. Tr., at 45. The marriage certificate lists their parents' names and Plaintiff's place of birth as Zacatecas, Mexico. Ex. I (ECF No. 47-8). Plaintiff and his wife claim they did not read this document but admit to signing it. Tr., at 5-6, 46.

In 1997, Plaintiff and his wife remarried in Florida to help with her immigration status. Tr., at 7. Plaintiff petitioned for his wife to become a legal resident using his original Texas birth certificate. Tr., at 7-8. Eventually, Plaintiff petitioned for his siblings and parents to become residents in the United States. Tr., at 11-12, 17.

Later the same year, Plaintiff applied for a United States passport. Tr., at 12. In support of his application, Plaintiff provided the original Texas birth certificate to the passport office. However, the passport office claimed the birth certificate was a counterfeit and confiscated it. Tr., at 13. Plaintiff was then arrested for providing false documentation and transported to immigration services for removal proceedings. Tr., at 13, 28. The deportation proceedings, however, were terminated on June 10, 1998 due to the issuance of a delayed Texas birth certificate on June 9, 1998. See Ex. K (ECF No. 47-10).

Plaintiff obtained a delayed Texas birth certificate by providing an affidavit from his brother, Manuel Moreno Beltran, and his children's birth certificates from Florida. Tr., at 29; Ex. C (ECF No. 47-2). Although his brother provided an affidavit stating that Plaintiff was born in Texas, his brother does not have personal knowledge of this fact. Tr., at 38. His brother only

3

believes this because his parents returned from Texas with Plaintiff and they told him where Plaintiff was born. Tr., at 41. Plaintiff acknowledges that his children's birth certificates indicate that he was born in Texas because he gave this information to the hospital. Tr., at 29. Although his parents were alive, Plaintiff did not ask his parents for an affidavit because his attorney did not advise him to obtain affidavits from them. Tr., 30. However, he confronted his parents about the documents and they insisted the documents were valid. Tr., at 31. He trusted his parents and had no reason to think they were lying to him. Tr., at 16.

After Plaintiff received the delayed Texas birth certificate, he obtained a new social security number. Tr., at 20-21. Plaintiff also reapplied for a passport in 1998 but was again denied. Plaintiff claims he wrote a letter withdrawing his application because he no longer needed a passport to travel between the United States and Mexico. Tr., at 14; Ex. J (ECF No. 47-9). Although Plaintiff signed the letter, he did not read it because he cannot read nor write in English.

Plaintiff again applied for a passport in 2006 because he claimed he now needed it to travel between the United States and Mexico. Tr., at 14. His application was denied once again and the office kept his birth certificate. Tr., at 15. Plaintiff tried to get supporting documentation to prove his place of birth but he was unsuccessful. Tr., at 15-16. The Texas Bureau of Vital Statistics has no record of an original birth certificate for Plaintiff. Ex. C (ECF No. 47-2); Ex. F (ECF No. 47-5). Similarly, the City of Victoria has no record of Plaintiff's birth. Ex. E (ECF No. 47-4). Finally, the Church that purportedly issued Plaintiff's Texas baptismal record does not have a record for Plaintiff. Ex. H (ECF No. 47-7). When the passport agency would not issue him a passport, Plaintiff decided to file this lawsuit. Tr., at 15.

## III. DISCUSSION

This Court, having fully considered the testimony and documentary evidence received at trial, as well as the applicable law and arguments of counsel, finds that Plaintiff has failed to meet his burden of proof, by a preponderance of the evidence, that he was born in the United States.[1]

In finding that he has not met his burden of proof, this Court largely bases its decision on the fact that Plaintiff has a contemporaneously filed Mexican birth certificate. The Mexican birth certificate was filed eleven days after Plaintiff was born. Plaintiff's father brought him to the registry in order to have the Mexican birth certificate issued and listed his place of birth as Mexico. This factor weighs heavily in favor of finding that Plaintiff was born in Mexico. Rivera v. Albright, No. 99 C 328, 2000 WL 1514075, at *3 (N.D. Ill. Oct. 11, 2000) (finding a presumption of alienage when there is a contemporaneously filed foreign birth certificate). Plaintiff offers no explanation for why his parents obtained the Mexican birth certificate or why he was baptized in Mexico. Indeed, Plaintiff even admitted that he could have attended school in Mexico with his United States birth certificate. This Court also notes that all of his siblings were born in the same town that the Mexican birth certificate states as Plaintiff's place of birth. See Ex. A (ECF No. 47-1). Further, Plaintiff's marriage certificate issued in 1992 lists his place of birth as Mexico. See Ex. I (ECF No. 47-8). Although Plaintiff claims that he did not fill out this information, this Court does not find credible Plaintiff's claim that everything on the certificate

---

[1] Plaintiff bears the burden of proving his citizenship by a preponderance of the evidence. Ramirez v. Clinton, No. 08-5770, 2011 WL 2838173, at *4 (D. Minn. July 18, 2011) (citing Rivera v. Albright, No. 99 C 328, 2000 WL 1514075, at *3 (N.D. Ill. Oct. 11, 2000)). However, "[t]here is no specific list of documents [plaintiff] must use or may use. [A plaintiff] must simply demonstrate by a preponderance of the evidence that he was born in the United States." Id.

is accurate except for his place of birth. Further, the fact that Plaintiff had already been living in the United States for approximately eight years before the issuance of the marriage certificate undermines this explanation.

Plaintiff cannot meet his burden of proof with the documentation that was given to him by his mother. Each of the documents have been proven to be a counterfeit. Plaintiff cannot rely on the original Texas birth certificate that his mother gave him. The fact that neither the Texas Bureau of Vital Statistics nor the City of Victoria have records of Plaintiff's birth demonstrates that this document is a counterfeit. See Ex. C (ECF No. 47-2), Ex. E (ECF No. 47-4), Ex. F (ECF No. 47-5). Likewise, Plaintiff cannot rely on the Texas baptismal certificate that his mother gave him. The church Plaintiff claims issued the certificate does not have a record for Plaintiff's baptism which indicates that it too is a counterfeit. Ex. H (ECF No. 47-7). Finally, the social security card has been proven to be a counterfeit because it actually belonged to another person. Tr., at 20. While the fact that these documents are counterfeit does not prove that Plaintiff was born in Mexico, they likewise cannot prove he was born in the United States.

Additionally, Plaintiff cannot rely on his delayed Texas birth certificate to prove that he was born in the United States. First, a delayed birth certificate is given less evidentiary weight than a contemporaneously filed birth certificate. See Liacakos v. Kennedy, 195 F. Supp. 630, 631 (D.D.C. 1961). Plaintiff's delayed Texas birth certificate was issued on June 9, 1998, almost forty years after Plaintiff was born. See Ex. C (ECF No. 47-2). Contrast this with his Mexican birth certificate which was filed eleven days after his birth. See Ex. A (ECF No. 47-1). Second, Plaintiff's delayed Texas birth certificate was issued based entirely on documents that do not prove that he was born in the United States. To obtain the delayed Texas birth certificate, Plaintiff used his children's birth certificates and an affidavit from his brother. His children's

birth certificates, which list the United States as Plaintiff's place of birth, should not factor into this Court's analysis. Plaintiff readily admits that he reported his place of birth to the hospital. Tr., at 29.[2] Although, the affidavit of Plaintiff's brother should be given some probative value because their parents told him Plaintiff was born in Texas, he has no first-hand knowledge of this fact. Tr., at 38; see also Ramirez, 2011 WL 2838173, at *4 (giving probative value to plaintiff's reputation among family members that plaintiff was born in the United States); Liacakos, 195 F. Supp. at 633 (stating that a mother's statement to Plaintiff of his place of birth should be given some evidentiary weight since it corroborates documentary evidence). Therefore, the Court gives Plaintiff's delayed Texas birth certificate little weight in its determination.

Likewise, Plaintiff cannot rely on the fact that he was issued a new social security card and that his removal proceedings were terminated. The aforementioned occurred only because Plaintiff was issued the delayed Texas birth certificate. This Court notes that even when faced with removal proceedings, Plaintiff failed to obtain an affidavit from either of his parents who were still alive at the time. Tr., at 30. An affidavit from Plaintiff's parents would have supported his petition because his parents had first hand knowledge of his place of birth.

This Court bases its decision solely on the lack of evidence proving that Plaintiff was born in the United States. However, by finding that Plaintiff has not met his burden of proof to demonstrate that he was born in the United States, this Court does not find that Plaintiff knew that his documentation was counterfeit. Likewise, this Court makes no determination as to how Plaintiff's parents obtained faulty documents, whether by being deceived by the midwife or through illegal measures. This Court does find Plaintiff, his brother, and his wife to be credible

---

[2] However, the Court does factor into its analysis the fact that Plaintiff's parents always told him that he was born in the United States. See Ramirez, 2011 WL 2838173, at *4 (finding similar statements were admissible and probative of a plaintiff's place of birth).

7

witnesses in their testimony.[3] The Court notes that it appears Plaintiff has the honestly held belief that he was born in the United States and he did not have any knowledge that there were problems with his documentation until he was denied a passport in 1997. Unfortunately for Plaintiff, a sincere belief of being born in the United States does not make one a citizen. See Miller v. Albright, 523 U.S. 420, 423 (1998) (quoting United States v. Wong Kim Ark, 169 U.S. 649, 702 (1898) (stating that "there are two sources of citizenship, and two only: birth and naturalization.").

IV.   **CONCLUSION**

For the foregoing reasons, this Court finds that Plaintiff has failed to meet his burden of proof under 8 U.S.C. § 1503. Plaintiff cannot show that it is more likely than not that he was born in the United States. Final Judgment will be entered for Defendants by separate Order.

DONE AND ORDERED in Chambers at Miami, Florida, this 6th day of July, 2012.

K. MICHAEL MOORE
UNITED STATES DISTRICT JUDGE

cc:   All counsel of record

---

[3] As the trier of fact in this case, the Court may make judgments regarding the credibility of the witnesses that come before it. See Caro-Galvan v. Curtis Richardson, Inc., 993 F.2d 1500, 1504 (11th Cir. 1993) (citing Chris Berg, Inc. v. Acme Mining Co., 893 F.2d 1235, 1238 n.2 (11th Cir. 1990) (recognizing that the court must weigh the evidence and make credibility determinations)). A witness' testimony may be believed in full, in part, or entirely discounted. See Moore v. Chesapeake & Ohio Ry. Co., 340 U.S. 573, 576 (1951).